Our first case on this docket is Timothy Jany v. Safeco Insurance Company. We have Mr. Howerton for the appellant and Mr. Best for the appellee. Mr. Howerton, you may proceed when you're ready. Thank you. It is pronounced Johnny. Johnny. That was going to be my third try. That's the way he pronounces it. I'm asked to add a little salt. May it please this honorable court, words are very important. The difference between the almost right word and the right word is really a large matter. It's the difference between the lightning bug and the lightning. And Mark Twain said that, and that is very apropos in really the issue that is the crux of this case. This is a stacking case. It's an intra-stacking case. One insurance policy insures three vehicles. In this particular case, Timothy Jany had a son, Joshua. Joshua was a passenger in Ryan Holman's car. It crashed. Joshua was killed. Holman was insured by State Farm. They paid $100,000 under the liability policy and $25,000 under medical pay. Johnny saw underinsured motorist coverage under this policy and was denied. In this particular policy, you will see that four cars are insured. The declarations appear in my separate appendix. Each car is named, and there is a separate limit of liability of underinsured motorist coverage that is listed underneath each car. Therefore, car one, I will call it, has $50,000 in underinsured motorist coverage. Car two, under it, is listed $50,000 in underinsured motorist coverage. Car three, likewise, and car four, likewise. The circuit court, I granted Safeco's motion for summary judgment and denied mine. I first want to address the issue of stacking. And I want to say that I will refer you to, first, my appendix, which is filed separately, and with particularity, I suggest that if you read pages 38 through 56, I have attempted, and I think I do, explain in a stripped-down version of the holding of the cases that will demonstrate how stacking and the law of stacking has come about, what it is, and how it will apply to this case. In summary, that law of stacking is this. If the limit of liability clause directs the reader to a... I'm sorry. If the limit of liability clause, if I misspoke, what I meant to say was if the limit of liability clause directs the reader to the declarations in order to ascertain what the limits are, then under Bruder and its progeny that I have set out on those pages, the policy may stack and it may not stack. If the policy lists the limits, if the declarations list the limits only one time on the declaration, the tendency is, in general, as a general rule, you might say that that policy does not stack. On the other hand, if when the attention is drawn to the declarations and there are multiple cards and each card lists a limit of liability, the policy does stack. I will answer any questions on that point, but what I want to point out is that this case is, in reality, governed by Yates and Hobbs. Yates appears in my appendix at page A44, and in Yates, the limit of liability said the limit is shown in the declarations. At page A45, which is in my appendix, the declarations is set forth. The limits are listed twice. The policy stacks because there is ambiguity. Hobbs specifically and explicitly approved Yates. Hobbs is a Supreme Court case. Therefore, that really is the crux of the issue of stacking. If there are no questions on that issue, if there are, I will answer them. If not, I intend to move to a different issue. Once the policy is determined by the aggregation of the limits, the question then is, is Safeco's exposure limited, or is their exposure diminished by any other provision in the policy? Well, first of all, in the limit of liability section, there is a set of points, meaning that Safeco has the right to deduct from its exposure of $200,000 the money that was paid by State Farm, which is $125,000. That being determined, the question then becomes, is there any other provision of the policy that would further limit the exposure, or that would do away with the exposure at all? That is, I want to turn your attention to the other insurance clause inside the underinsured motorist portion of the policy, and it appears in the appendix at page 824. You may, if you wish, want to refer to that now. You don't have to. You've got the appendix. If you wish to refer to it, I will pause just a moment. In the other insurance clause that appears at page 824, it starts at the bottom of the left-hand column. Paragraph A does not apply to our case, because it says for uninsured motorist coverage only, and that is not this case. Paragraph B, which appears at the top of the column on the same page, says for underinsured motorist coverage, and that's the one we will be talking about. That clause says for underinsured motorist coverage only if there is other applicable insurance available under one or more policies or provisions of coverage. I'm going to stop right there. Because first of all, the issue is what does that mean? It says if there is other applicable insurance available under one or more policies, does that mean is there other applicable underinsurance in this case? Because if that is what is meant, then there is no other available underinsured motorist coverage, and paragraph B has no application to this case at all. Before I go further and talk about the other way, I'm sorry, I'll go ahead and talk about the other way. The other way that you can read it is that it also includes Ryan Pullman's, that is, the torque teaser's insurance. If it does, then we have to parse the language. But if it can be read two ways, Tim Johnny, the appellant and the plaintiff in this case, gets the benefit of the most favorable reading. And the most favorable reading to him is that it has no application. And so therefore, paragraph B should not apply. But as a matter of pure English construction, it does not apply. Now, if you will follow with me, at paragraph B it says, for underinsured motorist coverage only, colon. And then it has paragraphs 1, 2, and 3. Now, when a colon appears, that clause, you might call it a dangling colon, although it doesn't dangle, but what is meant is that clause, for underinsured motorist coverage only, colon, that modifies each and every paragraph there under according to common English, rules of common English construction. So therefore, that means that that paragraph is talking about other available underinsured motorist coverage, and it does not include Pullman's policy. In my brief, I also make comparison to paragraph A to but there's the same argument. It is there in writing. I won't here repeat it, but that's another reason. So paragraph B simply does not apply to the case at all. Now, on the other hand, if you were to say, well, we will not follow the construction most favorable to Tim Johnny rule, and we will not really apply what I suggest to this honorable court as the rules of English construction, then you have to parse the sentence. And if it does include the Pullman policy, then it still does not diminish recovery. For this reason, here's where Plain's statement that I started with has meaning. This company, Safeco, chose in paragraph 1 to say that the damages cannot exceed the highest applicable limit for any one vehicle under any insurance. The company did not use the term shown. The term shown and applicable are two different words, and I'm reading on page 24 of paragraph B1, the limitation form. If the company had said it shall not exceed the highest amount shown for any one vehicle, then that would be $50,000, and Pullman had $100,000. So therefore, there would be no coverage. But instead, they used the term applicable, whereas shown means I show you something, as in I show you pictures of the baby, that is, I display it for view. Applicable means something quite different, and it has no relationship to the term shown. It means what can be applied to any one vehicle. Now, you have four vehicles that have $50,000 in coverage, and since they're listed in, not in columns, but separately and in columns, then under the rules of Yates, under the rules of Breuder and all his progeny, but explicitly Yates and Hobbs, the Supreme Court case, we are told that means there's $200,000 in underinsured motorist coverage. If Joshua had been riding in the car one, the amount that would be applicable to that car would be $200,000 under Yates and Hobbs. If he'd been riding in car two and not car one or three or four, there would be $200,000 of underinsured motorist coverage applicable to that vehicle, and so on. And if you have a case where he is a pedestrian, then, of course, the same rules apply because he's not really associated with the car, and in this case he's not, he's a passenger. But the coverage follows him as a member of the family of the insured, which is Tim John. And there's no dispute about that. Or in the alternative, if you wish, and according to my motion that I filed, and I will argue it with your permission. If you deny my motion, we can ignore it. I'll take just a second here to say that we've, I should have said that at the outset, that we're allowing your motion to add what state was submitted, and you will have, Mr. Bass, did we decide 10 days? I think it's 10 days. 10 days to respond if you wish. Or you can simply say, and here you don't really need to go this far, because here you're almost treading into an area that you don't have to and saying something you don't have to. But if you wish you can, of course, the court can. But simply extending the holding of Glidden. In Glidden, of course, Glidden held that an other insurance clause has no application where there's only the one uninsurance coverage, and there is no other uninsurance coverage. The reason that you have to extend Glidden would be that Glidden applied to primary insurance, and as I set forth in the brief and as explicitly as is provided in paragraph B of the other insurance clause, this is excess insurance. So you'd have to extend Glidden to excess. And then you have to recognize that after Glidden, there was a statute that was passed, and then it was said that it gave permission to allow the insurer to limit their liability to the highest of the limits of, if there's more than one policy, of one of the policies. And in this case, if there's not more than one policy, that statute doesn't even have application anyway. But you really needn't go that far. But if you do, you need to make those two recognitions in your opinion. The same arguments are made with respect to the medical pay provisions. It's the same theory, the same rationale, the same analysis, and the same case. Two points on medical pay. One, I've allowed and agreed, and this Court should allow set-off for the medical pay received by the Johnny family from the Holman State Farm policy. But there should not be two set-offs for that medical pay. There is no set-off provision in the medical pay provision at all. Medical pay does not provide for set-off at all, and the Court should not, after it is deducted the $25,000 under the limit of liability clause, should not deduct it again. Point two, the policy does not provide or explicitly prohibits duplicative payments. The medical pay should be included in the order, and whether it is duplicative or not really is a matter for the arbitrators in an arbitration to find out exactly what the damages are, and you should be explicit in your order as to what should be done if there is an arbitration. Thank you. The only other limitation that is available appears at the two or more hot goals provision in the general provisions, which if memory serves me right, I think that appears in my appendix at page 831, if I'm correct. And at the two or more hot goals, in the general conditions at page 831, it says if this policy insures two or more hot goals, or if any other auto insurance policy issued by us, then the maximum of our liability shall not exceed, and here again are the operative terms at the end of that sentence, the highest limit applicable to any one auto, not shown for any one auto, but applicable to. I've made my argument earlier on the use of that term, and it applies as well to our more hot goals. So what we are asking for this court, since this is de novo review, that is the standard of review, we are asking this court to reverse the judgment of the circuit court for safe code and to reverse the decision of the circuit court denying our motion for summary judgment and inner judgment for Johnny and against safe code and find that the coverage is $75,000 if you're settled, and the $20,000 in medical pay. Are there any questions? No, I don't think so. You'll have the opportunity to rebut, Mr. Howerton, Mr. Best. Thank you. Good morning. Good morning. Jim Best on behalf of safe code, and I would like to start off because I think this is simple in the sense that the other insurance clause that was referred to is the controlling factor in the decision of the case that was the trial court's decision, and I think this should be the appellate court's decision. First of all, when we refer to other insurance in this particular provision, I will cover this. The other insurance that we're talking about is the state farmhouse. This is underinsured. So it's implicit that there is going to be another policy because it's underinsured, and that would be the liability policy. So when we talk about applicable insurance, we're talking about state farm. We know it's applicable because there's no dispute that it was paid. So I think that the relevant paragraph is the one that's referred to, we can refer to A24, is the B1, and that's the one that we're referring to in the appendix on A24, B for underinsured motorist coverage only, and B1. But one thing that was not mentioned, which is very important, I think, in this case, is that B1 really comes from a statute that's in the insurance code that we have cited, and we quoted it in a brief at page 7 from 143A.2, and that's the anti-statute that specifically authorizes B1. So I think that's a very important point. B1 is nothing more than the statute that comes from the insurance code, and that's what Safeco has done, that's what other insurance companies have done, and that's why there is no staffing in this case, because the statute permits it and they put it in the policy, and that's what they've done. I think another factor that's important is that this very clause has been sanctioned by the Supreme Court in the Dresden case. Arguments were made, well, it should be against public policy, it should not enforce, it should not work. Well, the Supreme Court in Dresden, which is after Grutter, specifically held that this clause is enforceable. So then we get to the particular facts of the case, and in particular the idea that there are more cars listed on the deck with different limits. What effect does that have in regard to this other insurance clause? And that's why I go to the McElniel case that we've cited. That's a 1st District case, and I submit that's a case directly on point where the 1st District went through all the arguments. They're being made here by Mr. Janney's counsel, Mr. Holberton, and also the Willison case, which is a 4th District case, again, which has gone through all these arguments, and they get to the point that the case is controlled by the other insurance. So I tip my hat to Mr. Holberton about his arguments about English, but the bottom line is these are two cases directly in point, one from the 1st District, one from the 4th District. And on the McElniel case, there were three cars in the policy. On Willison, there were two different policies, and the courts in both cases held that there was no stacking. So there is no way for this court to rule that there is stacking and not be contrary to both McElniel, the 1st District, and Willison, the 4th District. So that's why I get back to my original point, is that basically all that B-1 is is the statute. We've included that in our policy like other insurance companies have, and it's been sanctioned under these two cases specifically that are factually the same. Now, the reason that the Bruder Dictum does not change all this is that basically when we listen to their argument, they're basically saying it's a per se rule, meaning that any time you list multiple limits next to the car on the policies, be it one policy, two policies, whatever, that automatically creates stacking, and no matter how you cut it, when you really distill their argument, that's what they're saying. And I submit that that is not the situation, and we can refer to the Hobbs case, which I think is very important, that came after Bruder, and Hobbs puts in this specific footnote at the very end of the decision, and I think it's important enough that I would like to briefly read it where it says, and this is the Supreme Court, our discussion of Bruder and Yeats should not be construed as establishing a per se rule that an insurance policy will be deemed ambiguous as to the limits of liability any time the limits are noted more than once on the declarations. Variances in policy language, and in particular anti-stacking clauses, frequently require a case-by-case review. So I think that's very important, that there is no per se rule, and no matter what they say, that's what they're arguing. They're saying since Safeco put four cars and listed the limit four times, they automatically stack. Well, that's not the law, that's not what Hobbs says, and that's why that footnote's there. The question is you have to look at the other provisions of the policy, just like was done in McAneel, just like was done in Willis. So with that, all this reliance on these cases that rely upon the Bruder Dicta are not applicable to this situation because, again, they completely ignore the other insurance provision, which you cannot do. And I would refer the court to the Stripland case. That's a second district case. And they basically went through the same type of discussion that we're going through here, the Stripland case. And basically what they held in that situation, they had the question of stacking two deck pages. The policy had two deck pages. So that means the limits were listed twice for each car. And under Mr. Hoberton's argument, that would mean automatically stacking, but the court held it did not stack. And the reason it didn't stack is because it put the Bruder Dicta in perspective. It confirmed that there's no per se rule. It further says that the Bruder Dicta argument does not fit with Gresin, and I agree with it. It completely sanctioned this other insurance clause that we're relying on. So to say that somehow our other insurance clause is not effective is completely ignoring Gresin, another Supreme Court case that came right afterwards. And finally, the Stripland case said, the problem of focusing on the number of times the limits are listed ignores the command that all portions of the insurance policy must be considered. And that's why you can't look at the Bruder Dicta alone and look at the limited liability clause alone. You have to look at the other insurance clause. Now, I submit that none of this is changed by the plaintiff's arguments, and I would also refer the Court to A24, the justices, A24 in the appendix of the plaintiff when you talk about this clause. I think it's important to look at that. And it's also set forth on page 24 of the plaintiff's or the appellant's brief, the clause. But their first argument is, well, because A, which applies to uninsured motorists, only applies if there are two uninsured policy, well, it only makes sense that the same thing would apply to underinsured. Well, I would point out, if you look at the language there on A, if you see the beginning paragraph for A for uninsured, it says, if there is other applicable similar insurance. It specifically says similar. Now, if we go to B, does it say similar? No. It says, if there is other applicable insurance. Why is there a difference? Because we know in underinsured there is going to be another policy, the liability policy, and that's not going to be the case in the uninsured, and that's why there is no reference to similar. So that's point one. The other point is this idea about applicable versus shown. Well, the state farm policy is applicable insurance, and we know that it's applicable because they pay, all right? They pay for the same loss. So you have to then keep that in mind. And then if you look at paragraph one, which we are referring to, if you look, it says the highest applicable limit for any one vehicle under any insurance. It doesn't say underinsured. It says any insurance. Well, any insurance in the context of underinsured is the liability policy of the torque fee because you have to have it. So to take this argument, you can't decide it in a vacuum. This is underinsured. There is going to be another policy. Then I submit the biggest flaw of their argument is to make it work. They have to refer you back to the limit of liability to determine what the applicable limit. How do they get to $200,000? Well, they have to go back to this argument of the limit of liability. But if you look at one, there's no mission of looking back to the limit of liability. What does it say? B1 says for any one vehicle, any one vehicle, all right? It couldn't be clearer. Applicable insurance for any one vehicle. Well, any one vehicle, the highest limit is the State Farm policy is $100,000. Any one vehicle under the Safeco policy is $50,000. So that makes the State Farm policy higher, and that's why there is no further coverage under the Safeco policies, and it does not stack. It doesn't refer us back to the limit of liability. It doesn't refer us back to the declaration page. It says any one vehicle. Now, I submit that that paragraph cannot be considered ambiguous because, again, it's taken right from the statute, all right? The statute says this very thing, which allows under any circumstance no stacking. So I submit that what we really have here is not an argument against our clause, but an argument against the stack. The plaintiff's real complaint is the anti-stacking statute because that's all we've done. We've included that in our policy. Now, the other part about that is that they try to go to paragraph 2 and paragraph 3, and that applies only if we have a situation where the Safeco policy was excess, our Safeco policy is prorat. Well, number one, we don't have two and three have no play in this because, number one, they only come into play if the Safeco policy provided coverage, and if there was another underinsured, how would you compare the two? Well, as I've demonstrated, hopefully, in paragraph 1, it's not in play, so you don't go to two and three. There's no application, all right, because we're not talking about an excess or a prorat. The Safeco policy doesn't provide coverage because of D1. Second of all, there is no excess insurance because our policy for any one vehicle is 50. The State Farm was 100, so there couldn't be excess, so all these arguments about two and three, about the Glynn case, and things of that nature, they have no application here because we're not dealing, okay? We're just dealing with the statute, and again, I submit that it gets down to that there are two cases that we have directly in point, and the plaintiff cannot point to one case. There's not one case cited by the plaintiff that holds what they want this court to hold, okay, and that means that B1 is not effective and that somehow you have to go back to the limit of liability to determine what the applicable limit is. That's not about what B1 says. B1 says the highest applicable limit for any one vehicle, one vehicle only, and again, we have cases directly in point, McElniel and Willison, and they found no stacking, and I submit the courts should do the same. So I believe that's my argument about the underinsured part of it, if any of the justices have any questions, okay? MedPay is a little bit different, all right, and it's a little bit different because an important fact is Safeco did pay $5,000 of MedPay, all right? It did pay that. Its obligation for underinsured is nonexistent because the state foreign policy is higher, 100 over 50. You really don't even have underinsured property, but in regard to the MedPay, the Safeco policy, and that would be on page 42 of our brief, the clause that we're referring to, and I think Mr. Hoverton referred to page 31, so we can do that. And on page 31 of the appendix, it says two or more autos insure two or more auto policies, and this is in the general provision, so it would apply to MedPay, and it says if this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto. So again, it's not key to the limit of liability in the MedPay because under the general provision, the highest limit applicable to any one auto. So that would be, again, under the Safeco policy under this clause for MedPay, $5,000. So we did pay the Johnnies $5,000 for MedPay, but that's the extent of our obligation under that clause. So again, if there's not any questions, I'll conclude my remarks. Basically, I would say I think really what this court should do is what the trial court do is simply follow the decisions of the 1st District and the 4th District and McAmeel and Willison and decide this case which has already been decided. And again, I point to the fact that in regard to the plaintiff's argument, there is no case to support their position. And again, no matter how you cut it, to sustain or to reverse this case would be going against McAmeel and Willison. It would be adopting a per se rule that any time you have more than one limit listed, you're liable, which is not the case under Bruger. And again, I submit that when you distill their argument, the real problem is they don't like what the legislature did by passing 143A5, and that's the stacking. But the legislature did. The company like Safeco is entitled to rely upon it. That's what we did. So it gets back to an insurance law, you have to apply the plain and ordinary meaning of the terms, and you can't strain to find ambiguities when none exist. So I think when you apply those principles that the trial court did render the first correct decision, just like McAmeel and Willison, and it should be affirmed. I appreciate your time. Thank you. Thank you, Mr. Best. Mr. Howerton, do you have a rebuttal? Thank you. Mr. Beasley's on the floor. Point one that he makes is in order to rule for the plaintiff in this case, you've got to go against McAmeel or McAmeel, however you pronounce that, and Willison. That is not true. To rule for the insurance company, you have to reverse Yates, and you have to reverse the Supreme Court and Hobbs because Hobbs explicitly approved Yates. Secondly, I deal with McAmeel and Willison. If you read with them, read those cases, there is absolutely no analysis. But whatever analysis there is, there are three arguments that are made, and this is at page two of my reply brief. The plaintiff made three arguments in that case. I don't make any of those. The plaintiff raised those issues to the appellate court. I don't raise those issues at all. It's not the issue in this case. I don't make those points. The next thing that he really bases his argument on is that you don't want to go around having a per se rule. Well, it's not a per se rule. These cases are decided on a case-by-case basis. I make that point in my brief, and I want to take the time to destroy that forever like that, and it should be destroyed forever. If you look at my appendix at page 48, and you've looked at Yates, you've looked at Pop, you've looked at all these other cases that I've set out there, and you know what the rule is. If the cars, if one policy had multiple cars and each less the limits of liability, then unless there's something else there, they aggregate. Unless there's some other provision, they aggregate. That's the law of Yates. It's the law of Pop. It's what our Supreme Court says. Contrast, however, Strickland. And in Pop's, there is a footnote and says simply because they are listed multiple times does not mean they aggregate. And here's why. Compare Strickland to Yates. At Strickland, the declaration sheet refers the reader to the declarations. On A49, one declaration ensures our state's coverage for one car of $100,000. There is a second declaration page that lists another car with the limits listed separately of $100,000. So you've got two cars listed, $100,000, this car, $100,000, this car, political limit of liability section. Although it refers you to the declarations page and although there are multiple declarations and multiple limits, it says the limit of liability section says the limit of liability for one auto shown, shown, not applicable, shown, shown on the declarations will not be combined with or added to the limits. Applicable to any other auto shown on the Pop's. That's not our case. And that is why the Supreme Court said, and they didn't ask Strickland in front of them. They might have asked back Strickland, you know. But they wanted to point out to courts it's ad hoc. There is no per se rule. And simply because it's multiple times doesn't mean it's that. You've got to engage in some kind of analysis. And the next point that was made is we don't like what the legislature said. Well, no, no, that's not the case. You do like it, is that what you're saying? The legislature's got a right to make it. And whether I like it or I don't like it is totally irrelevant. It makes no difference. It makes no difference at all what we think. And that's the point of these cases. It's not what we'd like the policy to say or what we think it says or what we would hope it says, but rather what it does say. And the statute says that an insurer can set forth terms and conditions which provide, if the insurer has coverage available under this section, under insured motorist coverage, under more than one policy or provision of coverage, any recovery or benefits may be equal to but not exceed the higher of the applicable limits of the respective coverage. In this one, it says not if there are more than one policy. It says if there's any coverage under one or more policy provisions. Thank you. Thank you, Mr. Howerton. Thank you, Mr. Best.